**James V. CULBERSON, Appellant,**

v.

**Wendell HAWKINS et al., Appellees.**

No. 13328.

Court of Civil Appeals of Texas.

Houston.

Jan. 22, 1959.

Rehearing Denied Feb. 19, 1959.

James L. Abney, Houston, for appellant.

Butler, Binion, Rice & Cook, Robert O. Campbell, Houston, for appellees.

WERLEIN, Justice.

Appellant, James V. Culberson, filed this suit on a promissory note dated December 4, 1956, for $841, payable to his order in three monthly installments, executed by Greer, Hawkins & Aguillard, Inc. by S. Wendell Hawkins, President, and endorsed by S. Wendell Hawkins. Hawkins pleaded that he was an accommodation endorser; that the note was without consideration as to him, and that he endorsed the same solely to enable appellant to borrow money thereon. The testimony showed that appellant did in fact borrow money from the National Bank of Commerce of Houston with the note in question as collateral. Thereafter, appellant was forced to take up the note. The note was given by the corporate defendant, Greer, Hawkins & Aguillard, Inc., for an indebtedness it owed appellant. It was undisputed that appellant was entitled to recovery against the corporation, and it is not a party to this appeal. The case was tried to the court without a jury and at the conclusion of appellant's evidence the court granted appellee's motion for judgment on the ground that the evidence showed Hawkins to be an accommodation endorser for appellant.

Appellant's First Point of Error is that the court erred in denying appellant judgment against Hawkins since at the time he signed the note as endorser appellant and appellee Hawkins had made no agreement whereby appellant would hold Hawkins harmless from liability.

Appellant was in need of funds and after consulting with his father-in-law, an attorney, and with the National Bank of Commerce of Houston, a note was prepared by appellant's attorney for execution by Greer, Hawkins & Aguillard, Inc., in the sum of $841, which represented the balance owed appellant by the corporation. Appellant at the time he obtained the signature of the corporation on the note then asked Hawkins to endorse the note, telling him that his endorsement would enable appellant to do some financing. Appellee testified that he endorsed the note strictly as a favor to appellant so that appellant might negotiate a loan from the bank.

The trial court was not requested to and did not file any Findings of Fact or Conclusions of Law. Therefore we must presume in favor of the trial court's judgment that it found every fact which has basis in the evidence in such way as to support the result reached.

The evidence is undisputed that there was no agreement between appellant and appellee that appellee would not be liable on his endorsement or that appellant would hold appellee harmless from liability. Appellee testified the agreement was that he would endorse the note on the reverse side to assist appellant in making his loan but that he knew of no agreement under which he was not to be liable on his endorsement. Appellee was asked, "But did you have an agreement that you were not to be liable on your endorsement?", to which he replied, "Well, it was understood all the time it was for the corporation." (Emphasis supplied) The question was repeated, and appellee testified, "I know of no agreement like that."

To the question as to whether he told his attorney the facts as he saw them, appellee testified, "I told him the facts as I saw them, yes, sir. I don't think I have ever used the word 'accommodation.' In fact, the first I even knew of an accommodation note was the way you used the word." Appellee then testified to questions as follows:

"Q. But you still say at the time you and Jim Culberson did not have an

agreement, that you, individually, were to be held harmless on this note and were not to be held liable for it? A. Yes, sir.

"Q. There was no such agreement between you and Jim Culberson? A. No, sir.

\* \* \* \* \* \*

"Q. Did you tell him Culberson you were not liable on this note? A. Mr. Culberson understood it the moment the note was made I was not liable. It was just out of a jesture in helping him get his deal that the note was signed."

This Court is called upon to determine whether under the foregoing testimony appellee Hawkins was an accommodation endorser, in the absence of some agreement, express or implied, or some understanding between the parties that appellee would not be liable on his endorsement or would be indemnified by appellant if he was called upon to pay the note.

■ Article 5936, Sec. 63, Vernon's Ann. Tex.Civ.St., Negotiable Instruments Act, provides:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Section 64 provides:

"Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery he is liable as indorser, in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.

\* \* \* \* \* \*

"3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

Under Sec. 64, subd. 1, when appellee Hawkins endorsed the note in question before delivery thereof, he became prima facie liable to Culberson on his endorsement.

Section 29 of Article 5933, V.A.T.S., the Negotiable Instruments Act, provides:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person \* \* \*"

Section 29 of the Negotiable Instruments Act does not state anything with reference to a nonliability or indemnity agreement. There are authorities in this State, and elsewhere, however, which clearly show that there must be such an agreement or understanding between the parties in order for the maker or endorser of a note to have the status of an accommodation maker or endorser in the legal sense.

See 6 Tex.Jur., p. 725, Bills and Notes, Sec. 105, where it is stated:

"But it is said that it is only in those cases where the note is executed for the sole purpose of its negotiation by the payee in order that he may obtain credit thereby, and under an agreement that he is to provide for payment at maturity and indemnify the maker, that the instrument becomes in law accommodation paper for the payee \* \* \*"

In the case of Magill v. McCamley, Tex. Civ.App., 182 S.W. 22, 23, writ ref., this Court through Chief Justice Pleasants stated:

"The facts averred in paragraph 3 of the answer show that the note sued on was executed for an amount then due by the land company. The note was payable 12 months after date, and its execution necessarily extended the time of payment of the then due account. This was a sufficient consideration for the note. The fact that the

plaintiff stated to these appellants, before they executed the note, that he was hard pressed for money and that if they would sign the note with the other defendants he could sell it to Mr. Pierce and 'get money thereon,' and that it would be an accommodation to him if appellants would execute the note, and that appellants signed the note upon this state of facts, present no defense to plaintiff's suit. It cannot be inferred from these facts that either plaintiff or appellants understood or intended that appellants would not be held liable on the note. Certainly there was no agreement, expressed or implied, on plaintiff's part, to protect appellants against the liability incurred by them by signing a note for a debt due by their comakers, and they cannot upon the facts stated claim to ·be relieved of their contract undertaking to pay plaintiff the amount due upon the note.

"In Parker v. Lewis, 39 Tex. [394] 395, cited by appellants, there was an agreement by the payee of a bill of exchange with the drawee that, if the latter would accept the bill so as to enable the payee to raise the money thereon, he, the payee would protect the drawee against any liability thereon.

"A similar state of facts existed in the case of Central Bank & Trust Co. v. Ford, Tex.Civ.App., 152 S.W. [700], 704, [705], also cited by appellants. The facts of these cases easily distinguish them from the instant case."

In Brinker v. First National Bank of Cleveland, 16 S.W.2d 965, 967, reversed on other grounds, Tex.Com.App., 37 S.W.2d 136, the Austin Court of Civil Appeals, through Chief Justice McClendon, used this language:

"The fact that a party who signs a note as maker himself receives no consideration does not necessarily constitute him an accommodation maker for the payee. In legal acceptation, accommodation as applied to notes and other paper has a technical meaning and is not used in its broadest popular sense. The fact that the payee may receive benefit or be accommodated by or may solicit the signature of a party who receives no consideration therefor does not constitute such party an accommodation maker for the payee. It is only in those cases where the note is executed for the sole purpose of its negotiation by the payee in order that he may obtain credit thereby, *and under an agreement that he is to provide for payment at maturity and indemnify the maker, that the instrument becomes in law accommodation paper for the payee.* These principles are established by the following cases, which in their facts are, if anything, stronger than the case at bar. Magill v. Mc-Camley (Tex.Civ.App.) 182 S.W. 22; Nalitzky v. Williams, 3 Cir., 237 F. 802; Skagit State Bank v. Moody, 86 Wash. 286, 150 P. 425, L.R.A.1916A, 1215; German American State Bank v. Watson, 99 Kan. 686, 163 P. 637. (Emphasis ours)

"It is clear from these authorities. if authority were necessary, that Brinker under the above evidence was not an accommodation maker for the bank, and this defense is unavailing."

In the case of Paden v. American State Bank & Trust Co., Tex.Civ.App., 103 S.W. 2d 243, writ dism., the court quoted with approval in its entirety the foregoing statement from the Brinker case.

In the case of First National Bank of Fort Worth v. Brown, Tex.Civ.App., 172 S.W.2d 151, ref. w. o. m., Judge Speer in his opinion cited, apparently with approval, the Brinker and Paden cases, supra.

See also 11 C.J.S. Bills and Notes § 737 b, p. 286, where it is stated in bold type:

"Accommodation paper is a bill or note to which the acceptor, drawer, maker, or indorser has put his name

without consideration, for the purpose of accommodating by a loan of his credit some other person *who is to provide for the bill or note when it falls due.*" (Emphasis ours)

In Lampp v. Farmers' Nat. Bank of Hillsboro, 29 S.W.2d 803, 804, writ ref., the Waco Court of Civil Appeals stated:

"Our courts have specifically laid down the doctrine, in State Banking Board v. James, Tex.Civ.App., 264 S.W. 145, 149, par. 3, that: 'An accommodation note, is one to which the accommodating party puts his name without consideration, for the purpose of benefiting or accommodating another party who desires to raise money on it, *and who is to provide for the note when due.*'" (Emphasis supplied)

See Handbook of the Law of Bills and Notes, by Charles P. Norton, Fourth Ed., Hornbook Series, Sec. 82, p. 236, where it is stated:

"The accommodated party impliedly contracts;

"(a) That he will pay the bill or note.

"(b) That he will repay the accommodation party for all loss incurred, if that party is compelled to pay in case of his default."

See Footnote 22, page 236, Id., as follows:

"It is because of this promise or the promise to indemnify the accommodating party that the accommodated party cannot recover from the accommodation party on the bill or note. Peterson v. Tillinghast [6 Cir.], 192 F. 287, 112 C.C.A. 545 (N.I.L.); Flinch v. Wood, Sup., 145 N.Y.S. 51 (N.I.L.); Kragnes v. Kragnes, [125] (Minn.) [118], 145 N.W. 785; Central Bank & Trust Co. v. Ford (Tex.Civ.App.) 152 S.W. 700. The obligation on the part of the accommodated party to pay the full amount due on the note or bill at maturity or to indemnify the accommodation party against loss by reason of his having to pay it is what makes the instrument accommodation paper. * * * So where the agreement of the party to whom the credit is lent is not to entirely take care of the instrument or to repay the entire loss by reason of the payment of it, the obligation is not made entirely for the former's accommodation—it is not called accommodation paper at all. Such is the case of ordinary joint makers, where each promises the other to pay one-half of the amount due."

In the cases which we have examined, the finding or judgment of the court that a maker or endorser was an accommodation party for the payee is generally based upon proof of a definite agreement or understanding of nonliability or indemnity.

See Peterson v. Tillinghast, 6 Cir., 192 F. 287, in which a promise of nonliability was shown to prove the note was executed solely for accommodation of the payee.

In Central National Bank of Waco v. Lawson, Tex.Civ.App., 7 S.W.2d 915, affirmed Tex.Com.App., 27 S.W.2d 125, the jury found in answer to the single issue submitted that the bank through its president, McCullough, agreed with Lawson that he would never be called upon to pay the note and that he was simply lending his name to the bank in that manner for the purpose of relieving the bank from criticisms, if any, being made by the bank examiners.

In Central Bank & Trust Company v. Ford, Tex.Civ.App., 152 S.W. 700, writ ref., there was evidence of an expressed agreement or understanding that the note would not be enforced or create a liability against the maker. In Callery v. Lyons, 292 N.Y. 15, 53 N.E.2d 376, 377, the evidence showed " * * * that there was an understanding or agreement, express or implied, that, as between defendant and the payees, there would be no liability of

the former to the latter because of such indorsement." The court stated:

"It was not essential that anyone should say to defendant in specific words that he would not be held liable on the said note. George v. Bacon, 138 App.Div. 208, 209, 210, 123 N.Y.S. 103. If upon the whole record the jury were justified in concluding that such an agreement was made or that such an understanding existed, plaintiffs could not recover upon his indorsement."

As above stated, appellee, when asked whether he told Culberson he, appellee, was not liable on the note, testified: "Mr. Culberson understood it the moment the note was made I was not liable. It was just out of a *j*esture in helping him get his deal that the note was signed."

■ We do not think that this language constitutes any evidence of probative force that there was any kind of agreement or understanding between the parties that appellee was not to be liable on his endorsement. Such statement was a conclusion on the part of appellee, with no factual support in the record. Appellee was undertaking to state what appellant's mental concept might have been.

■ Under the Texas cases supra, appellee could not be an accommodation endorser in the absence of an agreement or understanding, express or implied, that he would not be liable on his endorsement or that he would be indemnified if called upon to pay the instrument. See also Wittemann v. Sands, 238 N.Y. 434, 144 N.E. 671, 673, in which it is stated with respect to the Negotiable Instruments Law:

"As before the statute the payee was permitted to show the exact transaction and an agreement upon the part of the indorser to become liable to him, so now under the statute the indorser may show by parol evidence that he is not liable to the payee by reason of an agreement to the contrary."

■ The burden of proving an accommodation endorsement rests upon the endorser. Baggish v. Offengand, 99 Conn. 683, 122 A. 790, Teague v. Farmer's State Bank of Center, Tex.Civ.App. Beaumont, 55 S.W.2d 639.

■ In the instant case, appellee has failed to prove that he is not liable to appellant by reason of an agreement to the contrary. He has also failed to show or indicate by appropriate words his intention to be bound by his endorsement in any other capacity than as an endorser. Section 63, Negotiable Instruments Law. See Haddock, Blanchard & Co. v. Haddock, 192 N.Y. 499, 85 N.E. 682.

■ Appellee contends that he should not be held liable on his endorsement because he received no value. The Texas authorities, supra, indicate that liability vel non of an endorser is not dependent upon a consideration moving to him where he endorsed the instrument before delivery, as in the instant case. A consideration moving alone to the principal maker of the note is sufficient. See also Gilbreath v. Cage & Crow, Tex.Civ.App. El Paso, 198 S.W. 972; Bonner Oil Co. v. Gaines, 108 Tex. 232, 191 S.W. 552; Cantu v. Briscoe Motor Parts, Inc., Tex.Civ.App. San Antonio, 79 S.W.2d 923.

There is no evidence in the record sustaining the trial court's judgment denying appellant recovery against appellee on his endorsement of the note in question.

Such judgment as concerns appellee individually is reversed and judgment is here now rendered that appellant, James V. Culberson, recover of and from appellee, Wendell Hawkins, on said note the sum of $1,-042.03, together with all costs of court, of which sum $947.30 shall bear interest at the rate of 10% per annum from April 22, 1958, the date of the trial court's judgment, and $94.73 shall bear interest at 6% per annum from said date.

Reversed and rendered.

**146**

### On Appellees' Motion for Rehearing

In his motion for rehearing appellee asserts that since the trial court granted his motion for judgment when appellant rested his case, this Court, if of the opinion the trial court was in error, should remand the case in order that he might have a full opportunity to prove his defense. Appellee apparently testified fully in regard to the transaction when interrogated by appellant under the adverse witness rule, and appellant testified both on direct and cross-examination. In his motion for rehearing appellee has not shown that he has any additional evidence in support of his defense.

Motion for rehearing overruled.